UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| AF HOLDINGS LLC, | No. 2:12-cv-13434-JAC-MJH |
| Plaintiff, | Hon. Judge Julian Abele Cook |
| v. | |
| BRYAN JOHNSON II, | |
| Defendant, | |

| *Attorney for Plaintiff* | *Attorney for Defendant* |
|---|---|
| JONATHAN W. TAPPAN (P72195) | JOHN T. HERMANN (P52858) |
| Jonathan W. Tappan, PLLC | 2684 West Eleven Mile Road |
| 2549 Somerset Blvd. #102 | Berkley, MI 48072 |
| Troy, MI 48084 | (248) 591-9291 |
| Phone: (415) 325-5900 | |
| Email: blgibbs@wefightpiracy.com | |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S NEGLIGENCE CLAIM**

Plaintiff AF Holdings LLC ("Plaintiff"), through its undersigned counsel, hereby files this Response to Defendant Bryan Johnson II's ("Defendant") Motion to Dismiss Plaintiff's Negligence Claim.

1

## BRIEF OPPOSING DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S NEGLIGENCE CLAIM

### INTRODUCTION

Defendant Bryan Johnson II ("Defendant") has filed a Motion to Dismiss Plaintiff AF Holdings LLC's ("Plaintiff") Negligence Claim. Before moving to the legal argument section of its brief, Plaintiff responds to Defendant's opening remarks. Defendant asserts that "[imposing a duty to secure one's Internet connection] is a hefty burden, especially given the fact that numerous business (sic), libraries, and even court locations offer unsecured Wi-Fi access that can be used by anyone, including those who wish to commit copyright infringement." (ECF No. 4 at 8.) The storied tradition of the common law, however, is rife with examples of judges who were forced to decide whether to impose burdens that, though seemingly "hefty" at the time, were required by justice. In fact, the possibility of negligence liability itself is one such burden; though common law jurisdictions now take negligence for granted, there existed a time when one owed no duties whatsoever to others to avoid harms stemming from one's own negligent acts. Then came the industrial revolution forcing a new perspective on fault and one's duty to those in the surrounding community. (*See, e.g.,* Deborah A. Ballam, *The Evolution of the Government-Business Relationship in the United States: Colonial Times to Present*, 31 Am. Bus. L.J. 553, 582 [Feb., 1994]). Now comes the new electronic age with the Internet pushing those ideas even further. Plaintiff suggests that this very Court sits at a historically important crossroads in deciding whether such a burden is appropriately placed on the Internet subscriber under the present state of the Internet, and in consideration of its vast potential for abuse. Unsecured Internet networks allow unauthorized users to utilize such networks for malevolent ends, and to do so with almost guaranteed anonymity. It is well-known that, in today's world, nearly all of our individual and collective information is available via the internet; much of this information—

e.g. passwords, social security numbers—is intended to be private, or to be restricted in terms of who may access it. Other types of information, such as child pornography, are intended by law to be accessed by no one. Any restriction on access, however, will be only as strong as the availability of enforcement mechanisms. Every person who is able to access the Internet should have to do so in a way that will hold them accountable for their actions; any access to the Internet that is completely unsecured is an opening through which individuals wishing to engage in harmful, unlawful conduct can do so anonymously. Anonymous tortfeasors and criminals are extremely likely to escape all liability for their actions, and knowledge of the possibility of anonymity encourages still others to engage in similar conduct, using similar means. Without holding those responsible who control the access to this potentially dangerous tool, the abused get abused and there is no one to pin the blame upon. Burdens must always be weighed against benefits, and as one begins to consider the wide array of harms that can occur as the result of unsecured Internet connections, the burden begins to appear much less "hefty" than Defendant claims.

As detailed below in Plaintiff's legal argument, Defendant's arguments fall short. Defendant's first argument is that Plaintiff's claim for negligence is preempted by the copyright act. (ECF No. 4 at 11.) Defendant's second argument is that "Plaintiff's negligence claim is barred by CDA §230 immunity." (ECF No. 4 at 17.) Defendant's third argument is that "Plaintiff has not pled a 'special relationship' giving rise to Defendant's purported duty to secure his Internet access."

## LEGAL STANDARD

"The familiar standard for reviewing dismissals under Rule 12(b)(6) is that 'the factual allegations in the complaint must be regarded as true. The claim should not be dismissed unless

it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988.)

## LEGAL ARGUMENT

### I. PLAINTIFF'S CLAIM FOR NEGLIGENCE IS NOT PREEMPTED BY THE COPYRIGHT ACT

Defendant argues that Plaintiff's claim for negligence is preempted by the Copyright Act because Plaintiff's claims "fall within the subject matter of copyright law" and because the claims "protect rights equivalent to [an] exclusive [right] within the scope of federal copyright law." (ECF No. 4 at 12.)

#### A. PLAINTIFF'S CLAIM IS NOT WITHIN THE SUBJECT MATTER OF COPYRIGHT

Defendant argues that Plaintiff's claim is within the subject matter of copyright because it is "based on the alleged unauthorized reproduction and distribution of Plaintiff's copyrighted work," placing it "within the subject matter of copyright." However, Defendant's assertion is incorrect. Plaintiff's negligence claim against Defendant is not within the subject matter of copyright. Plaintiff's negligence claim does not allege that Defendant committed copyright infringement; rather, the claim alleges that Defendant *allowed* copyright infringement to take place. (*See* ECF No. 1.) Through negligence, Plaintiff seeks to allocate *liability* for the harm suffered. Simply put, the negligence claim against Defendant is an inquiry into whether Defendant should be civilly liable for Plaintiff's harm, and not whether Defendant committed copyright infringement of Plaintiff's work. And to that end, Plaintiff argues that Defendant should be civilly liable for Plaintiff's harm should its allegations be proven true.

///

### B. PLAINTIFF DOES NOT SEEK TO PROTECT RIGHTS THAT ARE IDENTICAL TO THE §106 EXCLUSIVE RIGHTS

Defendant argues that "Plaintiff's negligence claim against Josh Hatfield (sic) seeks to protect rights that are equivalent to the section 106 rights of reproduction, distribution, etc." (ECF No. 4 at 13.)[1] The negligence claim against Defendant, however, is distinct from an infringement claim. Plaintiff does not assert that Defendant infringed on its copyright. To the contrary, Plaintiff claims that Defendant is liable for the separate damage he caused by virtue of his negligent operation of a home network. Plaintiff intends to identify and sue the individual who is responsible for the infringement. The harm caused by Defendant's negligence is a *sui generis* harm distinct from infringement.

#### 1. PLAINTIFF'S NEGLIGENCE CLAIM SATISFIES THE "EXTRA ELEMENT" TEST

Defendant argues that, under the Ninth Circuit interpretation of the "extra element" test, "negligence does not add a legally cognizable additional element because a general claim for copyright infringement is fundamentally one founded on strict liability." (ECF No. 4 at 14.) The instant case, however, sits before the Sixth Circuit, and the analysis of the "extra element" test has run its course differently here. In *Wrench v. Taco Bell Corp.,* the Court asserted that "equivalency [to a right under §106] exists if the right defined by state law may be abridged by an act which in and of itself would infringe one of the exclusive rights. Conversely, if an extra element is required *instead of or in addition to the acts of reproduction, performance, distribution or display* in order to constitute a state-created cause of action, there is no preemption, provided that the extra element changes the nature of the action so that it is

---

[1] Defendant's error in identifying himself as Mr. Hatfield makes it clear that certain portions of this brief was simply copied and pasted by Defendants attorney from a brief filed in the Northern District of California, one in which the defendant was named Josh Hatfield. See *AF Holdings LLC v. John Doe and Josh Hatfield*, 4:12-cv-02049-PJH (ECF No. 17, June 30, 2012). Ironic (or telling depending the Court's viewpoint) in a lawsuit focused, in part, on copyright infringement.

qualitatively different from a copyright infringement claim." *Wrench v. Taco Bell Corp.,* 256 F.3d 446, 456 (6th Cir. 2001) (Emphasis added and internal citations omitted.) The *Wrench* court held that the plaintiffs' breach of contract claim, a state law right, was "not abridged by an act which in and of itself would infringe one of the exclusive rights granted by §106, since the right to be paid for the use of the work is not one of those rights." *Id*. In the instant case, Plaintiff's negligence claim alleges that Defendant breached a duty to Plaintiff by not securing his home Internet network; Defendant's breach, in and of itself, would not infringe one of the exclusive rights granted by §106. The *Wrench* Court goes on to assert that:

> An extra element is required instead of or in addition to the acts of reproduction, performance, distribution or display, in order to constitute the state-created cause of action. The extra element is the promise to pay. This extra element does change the nature of the action so that it is qualitatively different from a copyright infringement claim. The qualitative difference includes the requirement of proof of an enforceable promise and a breach thereof which requires, inter alia, proof of mutual assent and consideration, as well as proof of the value of the work and appellee's use thereof.

*Id*. In the instant case, negligence requires proof of duty, breach, proximate causation, and damages. In Plaintiff's Complaint, Plaintiff's allegations include that Defendant had a duty to secure his home Internet network; that Defendant breached that duty; that Defendant's breach proximately caused harm to Plaintiff; and that Plaintiff incurred damages as a result of Defendant's breach. (ECF No. 1 at 11, 13.) Each and every one of these allegations is necessary to proving negligence, and none of them are required to prove copyright infringement.

Defendant also argues that Plaintiff's negligence claim is preempted by the Copyright Act because "Plaintiff would…like to collect statutory damages from the Copyright Act from Defendant based on the 'copying and sharing' of Plaintiff's works." (ECF No. 4 at 15.) Defendant's characterization is imprecise; Plaintiff looks to collect statutory damages from Defendant on the basis of *another individual* copying and sharing Plaintiff's works, and

Defendant's negligence allowing that to take place by virtue of Defendant's failure to secure his internet connection. Plaintiff merely alleges that the correct *measure* of the damages caused by Defendant's negligence lies in the statutory damages set forth by the Copyright Act. Plaintiff's negligence claim thus satisfies the "extra element" test.

## C.  PLAINTIFF'S NEGLIGENCE CLAIM IS NOT PREEMPTED BY THE DOCTRINES OF CONFLICT AND FIELD PREEMPTION

Defendant argues that Plaintiff's claims are preempted by the doctrines of conflict and field preemption (ECF No. 4 at 16-17.) It is not clear on what basis Defendant is arguing conflict preemption. For conflict preemption to apply, Defendant must identify a specific federal statute and a specific state law that are in conflict. *Public Util., Gray Harbor, WA v. Idacorp*, 379 F.3d 641, 649-650 (9th Cir. 2004). Here, he does neither, other than vaguely referencing the Copyright Act, the Digital Millennium Copyright Act and the Communications Decency Act. (ECF No. 17 at 16-17.) None of these statutes relate to the operation of a home Internet connection. With respect to field preemption, Defendant must make a showing that the federal regulatory scheme is so comprehensive that it completely occupies the relevant field. *Idacorp*, 379 F.3d at 647. Defendant fails to cite to any case in support of his field preemption argument. (ECF No. 17 at 16-17.) There is nothing for Plaintiff to respond to in this regard.

## II.  DEFENDANT IS INELIGIBLE FOR CDA § 230 IMMUNITY BECAUSE PLAINTIFF'S CAUSE OF ACTION DOES NOT RELATE TO THE DISSEMINATION OF OFFENSIVE MATERIAL

Defendant's second argument is that Plaintiff's negligence claim is barred by section 230 of the Communications Decency Act ("CDA"). (ECF No. 4 at 17.) This provision prohibits "hold[ing] interactive computer services liable for their failure to edit, withhold or restrict access to offensive material disseminated through their medium." *Blumenthal v. Drudge*, 992 F.Supp. 44, 49 (D.D.C. 1998). Defendant does not cite to, nor is Plaintiff's counsel aware of, any case

where a network operator successfully invoked section 230 immunity for torts arising from the dissemination of non-offensive material. There is a simple reason why such a case does not exist: the CDA relates exclusively to offensive speech.

The CDA, was enacted to "deter and punish trafficking in obscenity, stalking, and harassment by means of computer." 47 U.S.C. § 230(b)(5). Congress recognized that holding online service providers (e.g. Facebook or Myspace) and Internet service providers (e.g. Comcast and Time Warner) liable for the offensive speech of their users would foster a "[C]hilling effect upon Internet free speech…." *Zeran v. America Online, Inc.*, 129 F.3d 327, 330-331 (4th Cir. 1998). Such companies would have no option but to deploy aggressive speech filters if they were exposed to tort liability for the offensive speech of their users.

The cases cited by Defendant all relate to immunity from tort liability for offensive speech. (ECF No. 17 at 18-22.) For example, the two cases in chief relied on by Defendant in support of his section 230 immunity claim are *Delfino v. Agilent Technologies, Inc.*, 52 Cal.Rptr.3d 376 (2006) and *Kathleen R. v. City of Livermore*, 104 Cal.Rptr.2d 772 (1st Dist. 2001). First, these cases are both California state cases; for some reason, Defendant does not cite to any relevant material coming out of the State of Michigan. Beyond that, in *Delfino*, an employer successfully invoked section 230 immunity to avoid tort liability for an employee's threatening and harassing e-mails. 52 Cal.Rptr.3d 376. In *Kathleen R.*, the City of Livermore, California successfully invoked section 230 immunity for the library's alleged failure to prevent a minor from accessing pornographic materials via the library's public computers. 104 Cal.Rptr.2d 772. In both instances, the speech in question was identified in the CDA's policy statements. See 47. U.S.C. § 230(b)(5) (ensuring vigorous enforcement of laws designed to, "deter and punish trafficking in obscenity, stalking and harassment by means of computer.")

In this case, Plaintiff is not seeking to impose liability on Defendant for his, "failure to edit, withhold or restrict access to offensive material disseminated through his residential network." *Blumenthal*, 992 F.Supp. 44 at 49. Instead, Plaintiff is seeking to impose liability on Defendant for the negligent maintenance of his residential network, which allowed a third-party to commit industrial-scale infringement of Plaintiff's copyrighted works. (ECF No. 1.) There is simply no basis on which to confer section 230 immunity on Defendant.

### III. DEFENDANT OWED A DUTY TO EXERCISE REASONABLE CARE IN THE OPERATION OF HIS WI-FI NETWORK, THE IMPOSITION OF WHICH DOES NOT REQUIRE A SPECIAL RELATIONSHIP

Defendant argues that Plaintiff's negligence claim should be dismissed because "Plaintiff has not pled a 'special relationship' giving rise to defendant's purported duty to secure his internet access." (ECF No. 4 at 22.) This argument is premised on Defendant's characterization of Plaintiff's claims against him as "non-feasance rather than active misfeasance." Defendant's premise is clearly false, and his argument must fail.

#### A. THE MISFEASANCE-NONFEASANCE DISTINCTION DOES NOT APPLY TO ANALYZING WHETHER A DUTY EXISTED

Defendant argues that Plaintiff must plead that a special relationship existed between Defendant and Plaintiff in order to allege that Defendant owed Plaintiff a duty to exercise reasonable care in the operation of his w-fi network; in support of this proposition, Defendant asserts that Plaintiff's allegations against Defendant constitute "nonfeasance" and not "misfeasance", and cites a California Supreme Court case, *Weirum v. RKO,* in favor of this proposition. (ECF No. 4 at 23.)

Defendant's citation of California state law, in conjunction with several references to "Defendant Josh Hatfield" (a defendant in a different, California case), indicates that Defendant may harbor some confusion about what case is presently being litigated, and where it is being

litigated. (*See* ECF No. 4 at 13, 15.) Defendant runs afoul of Federal Rule of Civil Procedure, Rule 11 in filing a brief that was essentially copied and pasted from a different case, in a different district with different controlling law.

As Michigan state law would be applicable to Plaintiff's negligence claim, Plaintiff now turns to the Michigan Supreme Court's assessment of the misfeasance-nonfeasance distinction. In *Fultz v. Union-Commerce Associates*, the Michigan Supreme Court asserted that:

> the 'slippery distinction' between misfeasance and nonfeasance of a duty undertaken obscures the proper initial inquiry: Whether a particular defendant owes any duty at all to a particular plaintiff...As there can be no breach of a nonexistent duty, the former misfeasance/nonfeasance inquiry in a negligence case is defective because it improperly focuses on whether a duty was breached instead of whether a duty exists at all."

*Fultz v. Union-Commerce Associates*, 683 NW 2d 587 (Mich. Sup. Ct. 2004.) Defendant thus mischaracterized the misfeasance-nonfeasance distinction as applicable to a determination of whether Defendant owed a duty. (ECF No. 4 at 23.) The *Fultz* holding, as it applies to the instant case, clearly indicates that Plaintiff need not allege or prove a special relationship between Plaintiff and Defendant in order to prove that a duty existed. Defendant's argument that no duty existed because of the absence of a special relationship must thus fail.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendant's Motion to Dismiss Plaintiff's Negligence Claim.

///
///

///
///
///
///

                                              Respectfully submitted,

                                              AF Holdings LLC,

DATED: September 28, 2012

                                          By:    /s/ Jonathan W. Tappan
                                                        JONATHAN W. TAPPAN (P72195)
                                                        Jonathan W. Tappan, PLLC
                                                        2549 Somerset Blvd. #102
                                                        Troy, MI 48084
                                                        Phone: (415) 325-5900
                                                        Email: blgibbs@wefightpiracy.com
                                                        *Attorney for Plaintiff*

2:12-cv-13434-JAC-MJH   Doc # 6   Filed 09/28/12   Pg 11 of 11   Pg ID 62